IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MARYLAND

PEDRO AUGUSTO SOSA, 30021-016     *
          Petitioner
          v.     *    CIVIL ACTION NO. RWT-13-2144

TIMOTHY S. STEWART.     *
          Respondent.
          *****

**MEMORANDUM OPINION**

I.     PROCEDURAL HISTORY

On July 24, 2013, Pedro Augusto Sosa ("Sosa"), who is confined at the Federal Correctional Institution in Cumberland, Maryland, filed this 28 U.S.C. § 2241 Petition for Habeas Corpus relief in which he contends that the Bureau of Prisons ("BOP") has refused to calculate his federal sentence to include the seven-month period from July 20, 2011 to February 28, 2012, for time spent in state custody after he had been remanded into the custody of the U.S. Marshal and sentenced by a state court judge.

II.     PENDING MOTIONS

Currently pending before the court is Respondent's Motion to Dismiss, construed as a motion for summary judgment, Sosa's Opposition, Respondent's Reply, and Sosa's Surreply. (ECF Nos. 14, 16, 22, & 23). For reasons that follow, Respondent's Motion shall be granted and the Petition shall be denied and dismissed.

III.     STANDARD OF REVIEW

    1.     Motion to Dismiss

"While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to prove the 'grounds' of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not

do." *Bell Atlantic Corporation v. Twombly*, 127 S.Ct. 1955, 1964-65 (2007). "[S]omething beyond the mere possibility of loss causation must be alleged, lest a plaintiff with a 'largely groundless claim' be allowed to 'take up the time of a number of other people...'" *Id*. at 1966 (quoting *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005)). In deciding a motion to dismiss pursuant to Rule 12(b)(6), the Court must "accept the well-pled allegations of the complaint as true" and "construe the facts and reasonable inferences derived therefrom in the light most favorable to the plaintiff." *Ibarra v. United States*, 120 F.3d 472, 474 (4th Cir. 1997). However, "because the court is testing the legal sufficiency of the claims, the court is not bound by plaintiff's legal conclusions." *IFAST, Ltd. v. Alliance Solution Telecommunications Industry*, 2007 WL 3224582, *3 (D. Md. 2007). *Azimirad v. HSBC Mortg. Corp.,* No. DKC–10–2853, 2011 WL 1375970, at *2–3 (D. Md. Apr. 12, 2011). If the Court, however, considers matters outside the pleadings, as the Court does here, the Court must treat the motion as a motion for summary judgment. *See* Fed. R. Civ. P. 12(d); *Syncrude Canada Ltd. v. Highland Consulting Grp., Inc.,* 916 F.Supp.2d 620, 622–23 (D. Md. 2013).

    2.    Motion for Summary Judgment

Summary Judgment is governed by Federal Rule of Civil Procedure 56(a), which provides, in part:

> The court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.

The Supreme Court has clarified that this does not mean that any factual dispute will defeat the motion:

> By its very terms, this standard provides that the mere existence of *some* alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no *genuine* issue of *material* fact.

2

*Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 247-48 (1986) (emphasis in original).  In resolving the motion, the court should "view the evidence in the light most favorable to ... the nonmovant, and draw all inferences in her favor without weighing the evidence or assessing the witness' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc.,* 290 F.3d 639, 644–45 (4th Cir. 2002). However, "[t]he party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of [his] pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'" *Bouchat v. Baltimore Ravens Football Club, Inc.,* 346 F.3d 514, 525 (4th Cir.2003) (alteration in original) (quoting Fed. R. Civ. P. 56(e)). Moreover, the court must abide by the "affirmative obligation of the trial judge to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat,* 346 F.3d at 526 (quoting *Drewitt v. Pratt,* 999 F.2d 774, 778–79 (4th Cir. 1993) and citing *Celotex Corp. v. Catrett,* 477 U.S. 317, 323–24 (1986)).

IV.     DISCUSSION

1. Facts

According to the Declaration and records presented by BOP Programs Specialist Kara Carr, on November 21, 2009, Sosa was arrested by local officials in Washington D.C. and detained on federal drug charges related to Case No. 09cr00312. (ECF No. 14, Ex. 1, Carr Decl. and Exs. 1A & 1B).  On November 23, 2009, a federal complaint was issued regarding Sosa's alleged criminal behavior occurring on November 21, 2009. (*Id.*, Carr. Decl. and Ex. 1B).  Sosa was placed in the custody of the U.S. Marshal from the District of Columbia Jail.   (*Id.*, Carr. Decl. and Exs. 1C & 1D).   On November 24, 2009, Sosa was indicted in the U.S. District Court for the District of Columbia for conspiracy to Possess Narcotics and Narcotics Possession. (*Id.*, Carr. Decl. and Ex. 1B).

3

Respondent notes that on March 25, 2010, Sosa appeared in the District Court for the District of Columbia for arraignment in *United States v. Sosa*, Criminal No. RCL-10-0068 involving one count of conspiracy to distribute narcotics. (ECF No. 14, Ex. 1E). On April 12, 2010, he was released on federal bond, but remained in custody due to local charges. (*Id.*, Ex. 1C). On April 13, 2010, he was released on bond for a second-degree assault charge in Prince George's County, Maryland, but remained in custody due to local charges from the Superior Court of the District of Columbia on a Fugitive from Justice case. The latter case was dismissed and Sosa was ordered released on April 14, 2010. Sosa was released from custody on April 15, 2010. (*Id.*, Ex. 1F).

Respondent alleges that on October 12, 2010, Sosa was arrested by law enforcement in Montgomery County, Maryland on a second-degree assault charge and commenced a "continuous period of confinement." On October 25, 2010, he was sentenced to 60 days in detention, all but 20 days suspended, plus three years supervised probation for driving/attempting to drive a vehicle while impaired by alcohol. (*Id.*, Ex. 1 at Carr Decl.). On December 3, 2010, bond was set in the second-degree assault case, but revoked one week later by Judge Ronald B. Rubin upon Sosa's motion. (*Id.*, Ex. 1G).

On December 13, 2010, Sosa's federal bond was revoked due to his Montgomery County, Maryland assault charge. (*Id.*, Ex. 1H). He was taken into custody of the U.S. Marshal that same date. (*Id.*, Ex. 1C). On February 18, 2011, however, Sosa was transferred to the Montgomery County Jail and approximately one month later, entered a plea of guilty to the second-degree assault charge. (*Id.*, Exs. 1C, 1G, & 1H). On May 16, 2011, charges pending against Sosa were nolle prossed. He remained in Maryland custody from February 18, 2011 until July 9, 2011.

Pursuant to a federal writ, Sosa was transferred into federal custody on July 19, 2011. (ECF No. 14, Exs. 1C & 1D). The following day, July 20, 2011, he was sentenced in the United States

District Court for the District of Columbia to a 60-month term on the aforementioned drug conspiracy charge. The court ordered that Sosa "be credited for the time held in case 09cr312 from 11/21/2009 to 4/12/2010 also in custody of the US from 12/13/2010 to now." (*Id*. Ex. 1J). On August 11, 2011, Sosa was returned to Maryland authorities. (*Id*., Ex. 1C). On August 24, 2011, he was sentenced to two years in the Circuit Court for Montgomery County on the second-degree Assault charge. (*Id*., Ex. 1K). He was received in the Maryland Reception, Diagnostic and Classification Center on September 7, 2011 to serve his two-year sentence. (*Id*., Exs. 1L & 1M). Officials from the Maryland Department of Public Safety and Correctional Services indicate that Sosa was awarded day-for-day credit for time served prior to sentencing by starting the two-year sentence on the date of the second-degree assault offense, October 7, 2010. Sosa was further awarded 222 days of confinement credit. (*Id*., Exs. 1K & 1M). On February 28, 2012, Sosa was released from state custody on mandatory supervision release and placed in the custody of the U.S. Marshal to serve his federal detainer. (*Id*., Exs. 1N & 1C).

Respondent argues that on October 19, 2012, the BOP formally asked U.S. District Judge Royce C. Lamberth whether he agreed with the retroactive designation whereby Sosa's service in a Maryland state institution would be designated for service of Sosa's federal sentence. (*Id*., Ex. 1S). Judge Lamberth did not respond to the request. The BOP evaluated the merits of Sosa's case under 18 U.S.C. § 3621(b) and denied *a nunc pro tunc* designation. (*Id*., Ex. 1T). Sosa's 60-month federal sentence has been computed to commence on February 28, 2012, with credit for time spent in custody from November 21, 2009 through April 15, 2010, and from December 13, 2010 through July 19, 2011. His projected release date is July 8, 2015. (ECF No. 14., Ex. 1U).

Respondent maintains that Sosa has received all credit he is due. He affirms that Sosa was in the primary custody of the State of Maryland when he was "borrowed" on a writ and sentenced in

the District Court for the District of Columbia on July 20, 2011.  Respondent claims that that the State of Maryland did not relinquish custody over Sosa until he finished his Maryland term of imprisonment and the federal sentencing court did not pronounce the federal sentence to run concurrent to any other sentence.  After federal sentencing, Sosa was returned to the custody of Maryland where he was sentenced to a two-year sentence in the Circuit Court for Montgomery County on August 24, 2011.  Respondent maintains that the State of Maryland counted Sosa's two-year term to run from October 7, 2010, the date of the offense, and he received credit from the State of Maryland for every day of confinement from July 20, 2011 to his release from State custody on February 28, 2012.  Finally, Respondent asserts that "multiple terms of confinement imposed at different times run consecutively unless the court orders that the terms are to run concurrently." *See* 18 U.S.C. § 3584(a).  He argues that Sosa's federal sentence was properly calculated to run consecutively to his Maryland sentence and he has received all the credit he is due.

In his Opposition, Sosa objects to the filing of Respondent's Motion to Dismiss, claiming it is more properly filed as a response to his Petition or as a motion for summary judgment as it does not raise the defenses found under Fed. R. Civ. P. 12(b).  (ECF No. 16).  He claims that Respondent did not respond to his claims regarding the concurrent nature of his sentence under 18 U.S.C. § 3584(a) and the "rule of lenity."  Further, he asserts that Respondent failed to fully produce evidence demonstrating that he was not in federal custody and his custody by the U.S. Marshal's Service shows that he was in the primary jurisdiction of federal authorities at the time of his federal sentencing and he is entitled to "uninterrupted credit toward his federal term of imprisonment."  He

refutes Respondent's claim that the BOP gave his requests for credit due consideration.[1]  (ECF No. 16).

   2.  Analysis

Primarily, it is noted that the BOP, not the courts, determines when a defendant's federal sentence starts and whether the defendant should receive credit for any time spent in custody.  A federal sentence of imprisonment generally commences "on the date the defendant is received in custody awaiting transportation to, or arrives voluntarily to commence service of sentence at, the official detention facility at which the sentence is to be served." 18 U.S.C. § 3585(a). "When a federal court imposes a sentence on a defendant who is already in state custody, the federal sentence may commence if and when the Attorney General or the Bureau of Prisons agrees to designate the state facility for service of the federal sentence." *United States v. Evans,* 159 F.3d 908, 911–12 (4th Cir. 1998) (citing *Barden v. Keohane,* 921 F.2d 476, 481–82 (3d Cir. 1990); and 18 U.S.C. § 3621(b)).

A federal sentence, however, cannot begin prior to its date of imposition. *United States v. McLean,* 867 F.2d 609, *1 (4th Cir. 1989)(*unpublished*).  Furthermore, a defendant's sentence does not begin to run when he is present in federal court pursuant to a federal writ of habeas corpus *ad prosequendum.  See Evans,* 159 F .3d at 912 (holding that the state "retains primary jurisdiction" over a prisoner in state custody who is present in federal court pursuant to such a writ); *see also Thomas v. Whalen,* 962 F.2d 358, 361 at n. 3 (4th Cir. 1992)(stating that "[a] prisoner is not even in custody for purposes of [beginning a federal sentence] when he appears in federal court pursuant to a writ *ad prosequendum;* he is merely 'on loan' to federal authorities.").

---

[1]  In effect, the Reply and Surreply filed by Respondent and Sosa reiterate the claims previously raised by the parties.  (ECF Nos. 22 & 23).

The BOP is responsible for computing federal terms of imprisonment. *See United States v. Wilson,* 503 U.S. 329 (1992). Pursuant to 18 U.S.C. § 3585(b), "[a] defendant shall be given credit toward the service of a term of imprisonment for any time he has spent in official detention prior to the date the sentence commences (1) as a result of the offense for which the sentence was imposed or (2) as a result of any other charge for which the defendant was arrested after the commission of the offense for which the sentence was imposed," provided that time has not been credited against another sentence. The Supreme Court of the United States has ruled that, with this language, "Congress made clear that a defendant could not receive a double credit for his detention time." *Wilson,* 503 U.S. at 337; *see also United States v. Brown,* 977 F.2d 574, *1 (4th Cir. 1992)(*unpublished*).

In the absence of clear intent to run his state sentence concurrently with his federal sentence, the execution of Sosa's 60-month federal sentence did not begin to run until the U.S. Marshal took custody over him to transfer him to a federal facility. The BOP did construe Judge Lamberth's sentencing Order to give Sosa credit from November 21, 2009 to April 12, 2010 and from December 13, 2010 to July 20, 2011. Sosa has already received credit from July 20, 2011 to February 28, 2012 in his Maryland sentence. He may not receive those same credits against his federal sentence.

V.   CONCLUSION

When a district court dismisses a habeas petition, a certificate of appealability may issue "only if the applicant has made a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). An inmate satisfies this standard by demonstrating "that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong" *Tennard v. Dretke*, 542 U.S. 274, 282 (2004) (quoting *Slack v. McDaniel*, 529 U.S. 473, 484 (2000)), or that

"the issues presented were 'adequate to deserve encouragement to proceed further.'" *Miller-el v. Cockrell*, 537 U.S. 322, 335-36 (2003) (quoting *Barefoot v. Estelle*, 463 U.S. 880, 893 n. 4 (1983). Sosa does not satisfy this standard, and the court declines to issue a certificate of appealability. For the aforementioned reasons Respondent's Motion shall be granted and Sosa's Petition for Writ of Habeas Corpus shall be denied and dismissed. A separate Order follows.


Date: May 5, 2014                                        /s/
                                              ROGER W. TITUS
                                              UNITED STATES DISTRICT JUDGE